# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| In re,<br><br>Shwanda Julie Parker and Fred Parker III,<br><br>Debtor(s). | C/A No. 19-04309-HB<br><br>Adv. Pro. No. 19-80062-HB<br><br>Chapter 13<br><br>**ORDER GRANTING MOTIONS TO DISMISS** |
| Fred Parker III, Shwanda Julie Parker,<br><br>Plaintiff(s),<br><br>v.<br><br>State of South Carolina, South Carolina Department of Social Services, Palmetto Automated Child Support System State Disbursement Unit, Lynn W. Lancaster, in her capacity as Clerk of Court for Laurens County, Honorable Joseph C. Smithdeal, Betty Wyatt, Catina Smith, Lindy Meece,<br><br>Defendant(s). | |

**THIS MATTER** is before the Court for consideration of the Motions to Dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and (6)[1] filed by: (1) Lynn W. Lancaster, in her capacity as Clerk of Court for Laurens County, Betty Wyatt, and Lindy Meece;[2] (2) the State of South Carolina and the Honorable Joseph C. Smithdeal;[3] and (3) South Carolina Department of Social Services and Palmetto Automated Child Support System State Disbursement Unit.[4] Plaintiffs Fred Parker III and Shwanda Julie Parker filed Responses.[5] This case involves a

---

[1] Fed. R. Civ. P. 12 is made applicable to this adversary proceeding pursuant to Fed. R. Bankr. P. 7012.
[2] ECF No. 22, filed Sept. 30, 2019.
[3] ECF No. 11, filed Sept. 17, 2019.
[4] ECF No. 21, filed Sept. 30, 2019.
[5] ECF Nos. 29-31, filed Oct. 16, 2019.

prepetition debt owed by Fred Parker to Defendant Catina Smith for child support arrearages. The Court previously ruled on a portion of the relief requested in the Complaint.[6] The remaining causes of action as titled in the Complaint are: (1) willful violation of 11 U.S.C. § 362; (2) lack of jurisdiction; (3) unauthorized practice of law;[7] (4) failure to supervise; (5) negligence; (6) violation of 15 U.S.C. § 1692 (Fair Debt Collection Practices Act); and (7) violation of the South Carolina Consumer Protection Code. Plaintiffs seek actual and punitive damages as well as attorney's fees.

## ALLEGATIONS OF THE COMPLAINT

Plaintiffs name eight Defendants[8] in this action and allege they are agents of each other. The allegations against the Defendants are frequently grouped together. Relevant allegations gleaned from the Complaint are summarized below.[9]

Defendant Smith is the recipient of the prepetition child support arrearage from Fred Parker. The Complaint alleges "Defendants" caused a Rule to Show Cause hearing to be scheduled before Defendant the Honorable Joseph C. Smithdeal ("Judge") for August 28, 2019, in state court in Laurens County, South Carolina on the child support arrearage due to Smith. On August 14, 2019, after the hearing was scheduled, Plaintiffs filed for Chapter 13 bankruptcy relief. The case was initially filed *pro se*, for the primary purpose of saving Plaintiffs' home. Defendant Department of Social Services ("DSS") was listed as "a creditor"

---

[6] *Order Pursuant to 11 U.S.C. § 105* (ECF No. 19, entered Sept. 23, 2019).
[7] This cause of action is asserted against only the Court Employees.
[8] Defendant Catina Smith failed to timely respond to the Complaint and Plaintiffs filed a motion for default judgment. (ECF No. 32, filed Oct. 16, 2019). The Court scheduled a hearing for November 26, 2019, to consider Plaintiffs' request for a default judgment against Catina Smith and any request for damages against her.
[9] "When ruling on a motion to dismiss, courts must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in favor of the plaintiff." *Hall v. DIRECTV, LLC*, 846 F.3d 757, 765 (4th Cir. 2017), *cert. denied,* 138 S. Ct. 635, 199 L. Ed. 2d 526 (2018) (citing *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011)).

2

by Plaintiffs and given notice of the bankruptcy. On August 27, 2019, Plaintiffs hired Jane H. Downey as bankruptcy counsel.

The Complaint alleges the bankruptcy divested "the Defendants" of jurisdiction over the collection of child support. Plaintiffs also named Lancaster (the Clerk of Court for Laurens County), Wyatt (the Deputy Clerk), and Meece (a member of the Clerk's staff) (collectively, "Court Employees"), the State of South Carolina ("State"), and Palmetto Automated Child Support System State Disbursement Unit ("Palmetto")[10] as additional Defendants.

Plaintiffs and Downey communicated unsuccessfully with various Defendants, including the Court Employees and the Judge, to assert the automatic stay of § 362 and stop the Rule to Show Cause hearing. When Downey first contacted the state court and asked that the Rule to Show Cause be removed from the hearing calendar, Meece informed her that Mr. Parker was required to attend the hearing to show proof of his bankruptcy. Downey asked to fax to the state court proof of the bankruptcy, but Meece insisted the bankruptcy would not stop the Rule to Show Cause hearing, called Downey "sugar," and advised her to "stop throwing around [her] law license" before abruptly hanging up the phone. As a result of this unproductive communication, Downey advised Lancaster in writing of the bankruptcy and transmitted case law demonstrating that any order entered as a result of the Rule to Show Cause hearing would be void. Despite these efforts, Plaintiffs allege "Defendants" held or caused the state court collection hearing to be held and participated as a whole in the Rule to Show Cause hearing.

---

[10] In its Motion, DSS credibly asserts that Palmetto is a case management system, not an entity with the capacity to be sued. In Plaintiffs' Response, Plaintiffs collectively refer to DSS and Palmetto as "DSS" and do not address whether Palmetto is an entity with the capacity to be sued or elaborate on its involvement in this matter.

3

Thereafter, Meece informed Mrs. Parker that the Rule to Show Cause hearing was held on August 28, 2019 and a bench warrant for Mr. Parker's arrest was to be issued. Mrs. Parker and Downey also spoke on a joint telephone call with Meece that day and asked for a copy of the state court order. Meece informed them that the order had not been signed and Mr. Parker should have hired a family law attorney rather than a bankruptcy attorney because the order would be signed later that day.

Additionally, Wyatt informed Mr. Parker that he could ask the Judge to allow him to pay a portion of the child support arrears to avoid the arrest warrant from being issued. Mr. Parker also contacted DSS to determine if a bench warrant had been entered against him. He was instructed to turn himself into the sheriff's office or detention center and "agents for DSS" asked him for his address and whereabouts.

The next day, Downey again asked Meece for a copy of the state court order, but was informed that because Downey was not a party to the suit, Meece could not provide her with a copy of the order and Mr. Parker could come to the court in person to obtain a copy. Concurrently, Wyatt contacted Mr. Parker informing him that no warrant had been issued and asked that he come to the court to sign a document indicating he would appear at the next hearing. Wyatt also asked Mr. Parker to have Downey cease contacting the Clerk's office.

Downey then spoke directly with Lancaster, who researched this matter and concluded that the Judge held the Rule to Show Cause hearing and, from the bench, verbally held Mr. Parker in contempt and ordered an arrest warrant be issued. However, the Judge later changed his mind and ordered the Rule to Show Cause hearing be continued to September 25, 2019. Lancaster informed Downey her office was instructed that child support is an obligation as

4

opposed to a debt and, therefore, is not stayed by a bankruptcy filing. As a result, the Court Employees believed the Rule to Show Cause hearing could proceed.

Plaintiffs feared for Mr. Parker's safety and suffered damages as a result the foregoing events. Plaintiffs incurred additional costs and attorney's fees. Mr. Parker did not stay at his home for fear of being arrested and incurred costs to stay elsewhere outside Laurens County.

On August 29, 2019, Downey filed this Summons and Complaint and a request for an emergency hearing to stop the Rule to Show Cause hearing in state court that was continued to September 25, 2019. An emergency hearing was held in this Court on September 20, 2019, resulting in an order pursuant to 11 U.S.C. §§ 105 and 362 prohibiting Smith and anyone acting on her behalf or in her interest from proceeding with efforts to collect the prepetition debt at issue here. The other causes of action identified above remain for consideration and are addressed by the Motions to Dismiss.

## STANDARD OF REVIEW

"A Rule 12(b)(1) motion for lack of subject matter jurisdiction raises the fundamental question of whether a court has jurisdiction to adjudicate the matter before it." *S.C. Elec. & Gas Co. v. Randall*, 331 F. Supp. 3d 485, 491 (D.S.C. 2018) (citing Fed. R. Civ. P. 12(b)(1)). "Federal courts are courts of limited subject matter jurisdiction, and as such there is no presumption that the court has jurisdiction." *Id.* (quoting *Pinkley, Inc. v. City of Frederick, Md.*, 191 F.3d 394, 399 (4th Cir. 1999)). "A Rule 12(b)(1) motion to dismiss should be granted 'only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law.'" *Balfour Beatty Infrastructure, Inc. v. Mayor & City Council of Baltimore*, 855 F.3d 247, 251 (4th Cir. 2017) (quoting *Evans v. B.F. Perkins Co., a Div. of Standex Int'l Corp.*, 166 F.3d 642, 647 (4th Cir. 1999)).

5

A motion filed under Rule 12(b)(6) challenges the legal sufficiency of the complaint and provides that a party may move to dismiss for failure to state a claim upon which relief can be granted. The legal sufficiency of the complaint is measured by whether it meets the standards for a pleading set forth in Rule 8, which provides the general rules of pleading, and Rule 12(b)(6), which requires a complaint to state a claim upon which relief can be granted. *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009). Rule 8 provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While Rule 8 may have previously been accepted as setting forth a "notice pleading" standard, the Supreme Court has since amplified this standard.

In order to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting in *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007)). A complaint meets the plausibility standard when it "articulate[s] facts, when accepted as true, that 'show' that the plaintiff has stated a claim entitling him to relief, i.e., the 'plausibility of entitlement to relief.'" *Giacomelli*, 588 F.3d at 193 (quoting *Iqbal*, 556 U.S. at 678). The pleader must provide more than mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citations omitted). In reviewing claims for failure to state a claim, a court must construe the allegations in the light most favorable to the plaintiff.

### NON-BANKRUPTCY CAUSES OF ACTION

After careful review of the allegations of the Complaint, the Court finds the following causes of action must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6): (1) lack of jurisdiction; (2) failure to supervise; (3) unauthorized practice of law; (4) negligence; (5) violation of 15 U.S.C. § 1692 (Fair Debt Collection Practices Act); and (6) violation of the

6

South Carolina Consumer Protection Code. The alleged facts and pleadings do not support separate causes of action for lack of jurisdiction, failure to supervise, or negligence. Additionally, there is "no private right of action in South Carolina for the unauthorized practice of law." *Franklin v. Chavis*, 371 S.C. 527, 535, 640 S.E.2d 873, 877 (2007). Further, the Fair Debt Collection Practices Act and South Carolina Consumer Protection Code are not applicable to any conduct alleged in the Complaint. *See* 15 U.S.C. § 1692a(5) (defining "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment."); S.C. Code Ann. § 37-1-201(7)(a) (defining "consumer" as a "buyer, lessee, or debtor to whom credit is granted in a consumer credit transaction").

**WILLFUL VIOLATION OF 11 U.S.C. § 362**
**JUDGE AND COURT EMPLOYEES**

The Judge and Court Employees argue Plaintiffs' Complaint must be dismissed pursuant to Fed. R. Civ. P. 12(b)(1) because they are entitled to judicial immunity. Plaintiffs assert these Defendants are not afforded this protection because they acted in the absence of jurisdiction, which was removed by the filing of this case and triggering of the automatic stay over the Rule to Show Cause matter.

"Although unfairness and injustice to a litigant may result on occasion, 'it is a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself.'" *Mireles v. Waco*, 502 U.S. 9, 10, 112 S. Ct. 286, 116 L. Ed.2d 9 (1991) (quoting *Bradley v. Fisher*, 13 Wall. 335, 20 L. Ed. 646

7

(1872)). "It is for this reason that judicial officers are entitled to judicial immunity for conduct that is judicial in nature and not performed in clear absence of all jurisdiction." *In re Johnson*, 310 B.R. 290, 292 (Bankr. D.S.C. 2003) (citing *Mireles*, 502 U.S. at 11, 112 S. Ct. 286)). A defendant entitled to judicial immunity enjoys "immunity from suit rather than a mere defense to liability." *Id.* at 293 (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S. Ct. 2806, 86 L.Ed.2d 411 (1985)).

The Fourth Circuit has noted "the important purpose served by the doctrine of judicial immunity, which has been described as protecting the public interest in having judges who are 'at liberty to exercise their functions with independence and without fear of consequences.'" *King v. Myers*, 973 F.2d 354 (4th Cir. 1992) (quoting *Pierson v. Ray*, 386 U.S. 547, 554 (1967)). "Judicial immunity is not for the protection or benefit of a malicious or corrupt judge, but for the benefit of the public, whose interest it is that the judges should be at liberty to exercise their functions with independence, and without fear of consequences." *Town of Hopkins, S.C. v. Cobb*, 466 F. Supp. 1215, 1218 (D.S.C. 1979) (quotations omitted).

As a result of these strong policy justifications for the doctrine, judicial immunity can be overcome only in two limited circumstances: (1) if the challenged action as not taken in the judge's judicial capacity; or (2) if the action was taken "in complete absence of all jurisdiction." *Mireles*, 502 U.S. at 11-12, 112 S. Ct. 286. The scope of jurisdiction must be broadly construed to effectuate the purposes of judicial immunity. *Stump v. Sparkman*, 435 U.S. 349, 356, 98 S. Ct. 1099, 55 L.Ed.2d 331 (1978). Further, there is a difference between acting in the complete absence of jurisdiction and acting in excess of jurisdiction. *Bright v. Gallia Cty., Ohio*, 753 F.3d 639, 649 (6th Cir. 2014) (citing *Bradley*, 13 Wall. 335, 20 L. Ed. 646). "A clear absence of all jurisdiction means a clear lack of all subject matter

jurisdiction." *Mullis v. U.S. Bankr. Court for Dist. of Nevada*, 828 F.2d 1385, 1389 (9th Cir. 1987).[11] When a judge acts in excess of his jurisdiction, his actions remain immune. *Stump*, 435 U.S. at 357 n.7, 98 S. Ct. 1099.

Additionally, "judicial officers are entitled to judicial immunity for conduct that is judicial in nature and not performed in clear absence of all jurisdiction." *In re Johnson*, 310 B.R. 290, 292 (Bankr. D.S.C. 2003) (citing *Mireles*, 502 U.S. at 11, 112 S. Ct. 286)). Absolute quasi-judicial immunity "extends to those persons performing tasks so integral or intertwined with the judicial process that these persons are considered an arm of the judicial officer who is immune." *Bush v. Rauch*, 38 F.3d 842, 847 (6th Cir. 1994). Likewise, absolute quasi-judicial immunity applies "when functions that are more administrative in character have been undertaken pursuant to the explicit direction of a judicial officer . . ." *Kincaid v. Vail*, 969 F.2d 594, 601 (7th Cir. 1992).

In determining whether quasi-judicial immunity applies, courts consider: "(1) whether the official's functions are similar to those of a judge; (2) whether a strong need exists for the official to perform essential functions for the public good without fear of harassment and intimidation; and (3) whether adequate procedural safeguards exist to protect against constitutional deprivations." *Howard v. Food Lion Inc.*, 232 F. Supp.2d 585, 594 (M.D.N.C. 2002) (citing *Qstrzenski v. Seigel*, 177 F.3d 245, 249 (4th Cir. 1999)). "[I]mmunity is vitiated only when the judicial officer acts in the clear absence of jurisdiction." *Pressly v. Gregory*,

---

[11] The Supreme Court illustrated the distinction between an act in the clear absence of jurisdiction and an act in excess of jurisdiction with this example:
> if a probate judge, with jurisdiction over only wills and estates, should try a criminal case, he would be acting in the clear absence of jurisdiction and would not be immune from liability for his action; on the other hand, if a judge of a criminal court should convict a defendant of a nonexistent crime, he would merely be acting in excess of his jurisdiction and would be immune.

*Mullis*, 828 F.2d at 1389 (quoting *Stump*, 435 U.S. at 357 n.7, 98 S. Ct. 1099).

9

831 F.2d 514, 517 (4th Cir. 1987) (citing *Stump v. Sparkman,* 435 U.S. 349, 349, 98 S. Ct. 1099, 55 L.Ed.2d 331 (1978)).  Under Rule 24 of the South Carolina Family Court Rules, the Court Employees are required to conduct monthly reviews of child support accounts and to issue rules to show cause whenever an account appears to be in arrears. *See* Rule 24(b), SCFCR.

Plaintiffs do not dispute the Judge was acting in a judicial capacity when he held the Rule to Show Cause hearing.  Rather, they argue § 362(a) removed all jurisdiction from the state court; therefore, any action taken after the filing of the bankruptcy case regarding the prepetition child support arrears was done in complete absence of jurisdiction and is not protected by judicial immunity.  Considering the applicable law, the allegations against the Judge do not indicate he acted in *complete* absence of jurisdiction to limit judicial immunity.  While holding of a Rule to Show Cause hearing may violate the automatic stay, that action here was only in excess of the Judge's jurisdiction. *See Matter of Chaban*, C/A No. 2:14-CV-14559, 2015 WL 5026079, at *3-4 (E.D. Mich. Aug. 25, 2015), *aff'd* (May 9, 2016) ("A number of decisions from across the country hold that court officials who violate the automatic stay remain protected by judicial immunity." (citing *Ryan v. Cholakis*, C/A No. 1:13-cv-1451, 2014 WL 803776 at *2 (N.D.N.Y. Feb. 25, 2014); *Burton v. Infinity Capital Mgmt.*, C/A No. 2:11-cv-1129, 2012 WL 607417 at *11 (D. Nev. Feb. 24, 2012); *In re Perry*, 312 B.R. 717, 719 (Bankr. M.D. Ga. 2004); *In re Womack*, 253 B.R. 241, 243 (Bankr. E.D. Ark. 2000))).  Therefore, judicial immunity protects the Judge from Plaintiffs' claim for damages and the cause of action asserted against him must be dismissed.

The allegations against the Court Employees related to damages for willful violation of the stay, if true, indicate a disregard for the automatic stay after notice thereof, state a

plausible claim for resulting damages, and are particularly troubling because public servants allegedly caused harm to members of the public they serve. Simple respect for the automatic stay in the future will avoid the need for emergency hearings and wasteful proceedings. However, the judicial immunity afforded to the Judge extends to the subordinate Court Employees acting under the Judge's direction. Accordingly, the Court Employees are entitled to absolute quasi-judicial immunity from the damages claim raised by Plaintiffs and the cause of action against them must be dismissed.

## DSS, PALMETTO, AND THE STATE

Although the Court must accept all well-pleaded allegations of the Complaint as true and view them in the light most favorable to Plaintiffs, this Complaint invites scrutiny – especially given the dismissal of the other Defendants. The allegations group the State, Palmetto, and DSS together with all Defendants, questionably label DSS as a "creditor" and agent of other Defendants, and fail to allege specific facts explaining DSS, Palmetto, and the State's relationships to Smith (the child support recipient) and their roles in the Rule to Show Cause matter. The Complaint does not include factual allegations as to a willful act by the State or Palmetto contrary to § 362 that resulted in harm to Plaintiffs or explain how the State or Palmetto was involved in these events, other than a blanket allegation that all Defendants are agents of each other. Additionally, the few factual allegations as to any act by DSS that may be contrary to § 362 and resulted in any harm to Plaintiffs are weak at best and do not meet the applicable plausibility standard. Plaintiffs have, therefore, failed to state a claim for damages for willful violation of the automatic stay by the State, Palmetto, or DSS[12] and this cause of action must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

---

[12] DSS argues persuasively and affidavits filed indicate its role in Rule to Show Cause hearings is quite limited. However, due to Plaintiffs' objection to the Court's consideration of any facts outside the pleadings at this early

11

The State, Palmetto, and DSS also assert any cause of action for damages is barred by sovereign immunity and request dismissal pursuant to Fed. R. Civ. P. 12(b)(1). Because the Complaint lacks detail of the exact role Plaintiffs allege these Defendants had in this matter, the Court cannot properly analyze the applicability of this defense and doing so is unnecessary given dismissal pursuant to Fed. R. Civ. P. 12(b)(6).

**IT IS, THEREFORE, ORDERED** that the Motions to Dismiss are **GRANTED** and all remaining causes of action against Defendants State of South Carolina, South Carolina Department of Social Services, Palmetto Automated Child Support System State Disbursement Unit, Lynn W. Lancaster, in her capacity as Clerk of Court for Laurens County, Honorable Joseph C. Smithdeal, Betty Wyatt, and Lindy Meece are hereby dismissed.

**FILED BY THE COURT**
**10/30/2019**



Entered: 10/30/2019

US Bankruptcy Judge
District of South Carolina

---

stage, DSS's affidavits were not a factor in the Court's decision. *See* Fed. R. Civ. P. 12(d) ("All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.").